# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| GEORGE E. JOHNSON, individually and derivatively as a shareholder of TOTAL LUXURY GROUP, INC., suing on behalf of all other similarly situated shareholders of TOTAL LUXURY GROUP, INC., and in right of TOTAL LUXURY GROUP, INC., and TOTAL LUXURY GROUP, INC., an Indiana corporation, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | NO. 2:07 CV 214 PPS |
| SANDY J. MASSELLI, JR., JOSEPH H. MASSELLI, JOHN MASSELLI, ROBERT D. BONNELL, MITCHELL BROWN, FIRST AMERICAN FINANCIAL, INC., INTERCAPITAL MANAGEMENT, LTD. (#1), INTERCAPITAL MANAGEMENT, LTD. (#2), INTERCAPITAL MANAGEMENT CORP., INTERCAPITAL GLOBAL FUND, LTD., ROCK CANDY HOLDINGS, LTD., and ARCADIA ESTATE CO., LTD., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Transfer Venue [DE81], which was filed by all Defendants, except Intercapital Management, Ltd. (#1), Intercapital Management Corp., and Rock Candy Holdings, Ltd.[1]  For the reasons discussed below, this Defendants' Motion is **GRANTED** and the Court **ORDERS** this case to be **TRANSFERRED** to the Trenton office of the United States District Court for the District of New Jersey.

---

[1]Intercapital Management, Ltd. (#1), Intercapital Management Corp., and Rock Candy Holdings, Ltd. have not responded to the Complaint.  Unless specifically noted, references to "Defendants" and/or "the parties" do not refer to these three defendants.

1

**BACKGROUND**

Plaintiff George E. Johnson filed this derivative action as a shareholder of then-Defendant Total Luxury Group, Inc. ("TLG") on June 27, 2007.[2]  Johnson alleges Defendants Sandy E. Masselli, Jr. ("Masselli") and Robert D. Bonnell "engaged in countless acts of fraud, deception, breaches of fiduciary duties, misrepresentations, self-dealing, [and] perjury and false promises."  (Compl. [DE1] ¶ 29.)  Essentially, the Complaint alleges that Masselli, who – at least at one time – was the CEO and Chairman of the Board of TLG, improperly acquired millions of shares of TLG stock with the assistance of Bonnell, a member of TLG's Board of Directors.  (*Id.* ¶ 30.)  The Complaint alleges that those shares were distributed in part to Masselli and/or the other defendants, many of which are entities he allegedly controls.  (*Id.*)  In addition, the Complaint contends that Masselli and Bonnell orchestrated the improper mergers and/or acquisitions of TLG with other entities.  (*Id.* ¶¶ 30-42.)

Based on these and other factual allegations, the Complaint asserts four causes of action: (1) Violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); (2) Violations of Section 16 of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) against Masselli; (3) Breach of Fiduciary Duty; and (4) Common Law Fraud.  The Complaint seeks, among other things, an order prohibiting the transfer of the alleged improperly acquired shares.

The Complaint makes a passing allegation regarding venue in the Northern District of Indiana.  (*See* Compl. ¶ 19.)  The only basis provided is that TLG is incorporated in the State of

---

[2]For the purposes of this discussion of the allegations contained in the Complaint, references to Defendants concern either the specifically-named defendant or all defendants, including Intercapital Management, Ltd. (#1), Intercapital Management Corp., and Rock Candy Holdings, Ltd.

Indiana and that, because of that fact, "Masselli and Bonnell, as officers and directors of TLG, transact business in Indiana." (*Id*.)  Other than being incorporated here, TLG has absolutely nothing to do with Indiana, and neither do any of the other Defendants.  At least the record does not reveal any such a connection.  What I do know about the connection to Indiana is what was learned at the oral argument on the request for a TRO [DE69].  During the hearing it was revealed that TLG is some kind of apparel company, now operating out of Florida, that use to be an internet gaming company.  Prior to TLG being an internet gaming company, it was a corporation centered around a farm in Kouts, Indiana.  That's the sum total of TLG's connection, as far as I can tell, with the State of Indiana.

After filing the Complaint, TLG sought a temporary restraining order prohibiting the transfer of those shares and prohibiting Defendants from representing that Masselli is a director or officer of TLG.  (*See* Mot. for TRO [DE55].)  This Court issued a Temporary Restraining Order on August 15 [DE62], reissued it orally on August 17 [DE69] after an initial hearing at which all parties who have filed an appearance were present, and then reduced it to writing on August 22 [DE71].  After this Court ordered the Plaintiffs to post a bond as security for the TRO [DE89], the Court, on TLG's motion, removed the TRO's provisions restricting the transfer of TLG shares [DE111].

On September 7, Defendants (other than TLG, Intercapital Management Ltd. (#1), Intercapital Management Corp., and Rock Candy Holdings, Ltd.) filed their Answer [DE79].  Within that Answer, Defendants admit that TLG is incorporated in Indiana, but deny that venue is proper.  (Ans. ¶ 19.)  Defendants also assert an affirmative defense that venue is not proper in this Court and that "[t]he proper venue is the United States District Court for the District of New

Jersey." (Ans., Additional Defenses ¶ 9.) Shortly thereafter, Magistrate Judge Cherry granted

TLG's Motion for Realignment [DE53]. (*See* Order Sept. 17, 2007 [DE80].) From that point

on, TLG has been treated as a plaintiff, which is common in shareholder derivative actions. *See,*

*e.g.*, 7C Wright *et al*., Fed. Prac. & Pro. § 1822 (2007).

Since the filing of the Complaint, the parties have engaged in discovery, filed pleadings

with the Court, and have participated in several hearings. The case was set for a preliminary

injunction hearing in early November, but that was vacated after a promising settlement

conference, which is discussed below.

On September 25, Defendants filed this Motion to Transfer Venue [DE81], along with an

accompanying brief, (*see* Br. in Supp. of Defs.' Mot. to Transfer Venue [DE82] ("Brief")).

Because of the fast-approaching PI hearing, this Court set an expedited briefing schedule

[DE90]. Plaintiffs filed a joint response to the Motion on October 9, (Pls.' Joint Resp. to Defs.'

Mot. to Transfer Venue [DE95] ("Response")) and Defendants filed their reply on October 11,

(Reply Br. in Supp. of Defs.' Mot. to Transfer Venue [DE96] ("Reply")). In addition, on

October 12 Plaintiffs filed a Motion for Leave to file Sur-Reply which contained their Joint Sur-

Reply in Opposition to Defendants' Motion to Transfer Venue as Exhibit 1 [DE97]. Defendants

filed a response to the Plaintiffs' Motion on October 16. (*See* Defs.' Resp. in Opp'n to Pls.'

Mot. for Leave to File Sur-Reply to Mot. to Transfer Venue [DE100].)

Although the present Motion has been fully briefed since mid-October, the Court has

delayed disposing of it until now because the parties appeared close to settlement. As detailed in

this Court's Order dated January 2, 2008 [DE125], the parties requested the Court conduct a

settlement conference and I agreed to hold one on October 30 [DE113]. Although the

negotiations were not promising until the very end, it appeared the parties had broken the deadlock at the last minute.  The parties left the settlement conference hoping to build upon their progress, but their negotiations faltered.  All hope for a settlement stemming from the conference collapsed by late November, and the parties quickly moved to enforce their respective versions of "the settlement agreement" [DE114 & 118].  The Court has now disposed of those motions [DE125].  In the interim, the Court withheld decision on the present Motion in order to allow time for the fragile negotiations.  There now being little or no hope for settlement, the Court sees no reason to delay ruling on this Motion.

## DISCUSSION

### I.   WAIVER

As a threshold matter, this Court turns to Plaintiffs' assertion that Defendants waived their objection to venue by defending against the requested TRO, briefing the necessity of a security bond for the TRO, and participating in various hearings and discovery.  (*See* Resp. at 3.) These actions did not waive Defendants' right to challenge venue.

Plaintiffs are correct that a challenge to venue should be raised early in the proceedings. *See* Fed. R. Civ. Pro. 12(b)(3).  However, Rule 12(h)(1) provides for two ways to waive a venue challenge:  by failing to raise it in a motion or by failing to raise it in the responsive pleading. Additionally, a defendant can waive venue by conduct that essentially delays pleading "improper venue because he wants to find out which way the wind is blowing."  *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 887-88 (7th Cir. 2004).  Here, Defendants have raised their venue challenge both in the responsive pleading, (Ans. ¶ 19; Additional Defenses ¶ 9) and in their relatively prompt Motion.  Furthermore, the Court does not believe that their

5

conduct waived the defense.  Defendants merely defended themselves against the TRO and sought security related to the TRO.  Similarly, they should not be penalized for undertaking discovery in light of the pending PI hearing, which was originally set for October 15.  Lastly, Defendants were ordered by this Court to participate in hearings and Defendants complied.  That fact also cannot be held against them.  Quite simply, Defendants only did what was necessary to protect their immediate interests.  This does not constitute a waiver.

Aside from just not waiving their defense, Defendants actually asserted their venue challenge relatively promptly.  They filed their responsive pleading in which they formally raised their venue objection and then shortly thereafter they filed the present Motion.  The fact that there has been a barrage of filings in this case does not change the rule that Defendants must present their venue challenge either in the responsive pleading or in a motion prior to that pleading.  While "improper venue must be pleaded early," it need not be "at the earliest possible opportunity."  *Am. Patriot*, 364 F.3d at 887.  In my judgment, Defendants moved quickly enough here, and therefore they have not waived their improper venue argument.  *See id*. (noting that a defendant "can move [based on improper venue] as early as he wants but he is not required to file a motion" and "has a right to wait until he files his answer").

## II.   VENUE

### A.   Venue in the Northern District of Indiana

For the purposes of deciding the substance of this Motion, the Court construes all disputed facts in the light most favorable to the non-moving party.  *See Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988), *superceded on other grounds by* 110 ILCS 2-209.  Once a defendant challenges venue, "the plaintiff bears the burden of proving that venue is proper."

*Moore v. Dixon*, 460 F. Supp. 2d 931, 935 (E.D. Wis. 2006).

Plaintiffs have not established that this case belongs in the Northern District of Indiana. As noted above, the only real connection this district has to the case is that TLG is incorporated in Indiana.  But that is not sufficient under § 1391.

As an initial matter, the parties miss the point that, because this is a shareholder derivative suit, venue is governed by 28 U.S.C. § 1401.  Under § 1401, a shareholder may file a derivative suit on behalf of the corporation "in any judicial district where the corporation might have sued the same defendants."  Therefore, venue in this case is proper only where TLG may have properly initiated the suit against the remaining defendants under § 1391.  *See Van Gelder v. Taylor*, 621 F. Supp. 613, 621 (N.D. Ill. 1985).

Because jurisdiction in this case is not founded solely on diversity of citizenship, § 1391(b) governs the proper venue for where TLG could have filed this suit.  Section 1391(b) provides that this action may only be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no other district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  Subsection 1 does not apply because not all of the Defendants reside in the same state.  (*See, e.g.*, Compl. ¶ 5 (alleging that Masselli is domiciled in New Jersey); *id.* ¶ 8 (alleging that Bonnell is domiciled in Canada and Vermont).)  Subsection 3 only applies when the other two do not.  *See Moore*, 460 F. Supp. 2d at 935.  Regardless, because TLG is effectively removed from this analysis under § 1401, the fact that it "may be found" in Indiana is irrelevant.  Thus, this district is the proper venue only if it meets the requirements of Subsection

2.

Determining whether a "substantial part" of the events or omissions that gave rise to the claim occurred in this district "is more of a qualitative, rather than quantitative inquiry." *Moore*, 460 F. Supp. 2d at 936 (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005)). A court must "assess[] the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum." *Id*. In other words, the critical question is whether the events in the forum "were part of the historical predicate for the instant suit." *Id*. (quotation marks omitted). This analysis does not require a winnowing down the possible fora to only one, but rather can result in multiple districts in which venue is proper. *Id*.

Plaintiffs have failed to demonstrate that "a substantial part of the events or omissions giving rise to the claim" occurred in Indiana. Plaintiffs' primary argument appears to be that venue is proper in Indiana because TLG is incorporated here and because New Jersey is not where "a substantial part of the events or omissions" took place. (*See* Resp. at 4.) But assuming for the moment that New Jersey is not where the acts took place, that does not make Indiana proper. Rather, Plaintiffs must show that Indiana *is* proper. Plaintiffs' only basis for claiming that Indiana is proper is that Masselli and Bonnell are officers of TLG and, because TLG is incorporated in Indiana, those Defendants should be subject to suit in Indiana. Leaving aside the fact that this analysis ignores the impact of § 1401, it also ignores the plain language of § 1391(b)(2). The proper analysis centers on where the Defendants' acts took place. *Cf. LeRoy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979) (in reference to a previous version of the statute, noting that "the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial" and that "Congress has

8

generally not made residence of the plaintiff a basis for venue in nondiversity cases") (emphasis in original).  Plaintiffs have given this Court absolutely no reason to believe that even one of the alleged "countless acts of fraud, deception, breaches of fiduciary duties, misrepresentations, self-dealing, perjury and false promises" occurred in Indiana.  Instead, the allegedly improper issuance of stock, manipulation of TLG via other corporations, failure to make proper filings with the SEC, fraudulent merger of TLG with other companies, and other acts (including the "continued failure to qualify to do business in the States of New Jersey and Florida") appear to have occurred entirely outside of Indiana.  (*See* Compl. ¶¶ 29-42.)  The Northern District of Indiana is simply not where the complained-of actions took place; and therefore is not the proper venue under § 1391.[3]

Nothing in *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264 (7th Cir. 1978), a case Plaintiffs point to in their sur-reply, mandates a different result.  First, *Donnelley* primarily concerns 28 U.S.C. § 1391(e), which provides for venue in civil actions "against federal officers and agencies."  *Donnelley*, 580 F.2d at 265.  Second, and more importantly, *Donnelley*'s discussion of § 1391(c), *id*. at 268-70, does not apply.  In 1988, well after *Donnelley* was decided, Congress amended § 1391(c), and the current provision only applies to venue with respect to a *defendant*-corporation's state of incorporation.  *See* 14D Wright *et al*., Fed. Prac. & Pro. § 3811.1.  Section 1391(c) does not provide an independent basis for proper venue in an action filed by a *plaintiff*-corporation based upon its state of incorporation.  Therefore, in order for venue to be proper in this case, Plaintiffs must point to some other applicable venue

---

[3]The fact that Masselli has consented to a deposition in Indiana – a fact that TLG points to as supporting venue in Indiana – is entirely irrelevant to whether the "historical predicate" for this suit is in this State.

provision, which, as discussed above, they do not.

**B.     Transfer to the District of New Jersey**

Because the present case laid venue in the wrong district, this Court can either dismiss

this suit entirely or, in the interest of justice, transfer it to any other district in which it could

have been brought.  28 U.S.C. § 1406(a).  *See also Hapaniewski v. City of Chi. Heights*, 883 F.2d

576, 579 (7th Cir. 1989).  Section 1406(a) gives courts this option because Congress wanted to

avoid injustice arising out of plaintiffs' incorrect guesses about the location of the critical events.

*See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).  Instead, Congress intended § 1406(a)

to allow a court to provide "as effective a remedy as possible."  *Id.*  In fact, transfer may still be

proper in a multi-defendant suit, even if the new forum might not be proper for one of the

defendants.  *See Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 530-31 (7th Cir. 2002).

Based on my review of the pleadings, I find that justice is best served by transferring this

case to the District of New Jersey.  First, justice counsels that this case be transferred, not

dismissed.  For the reasons outlined in the TRO [DE71], as subsequently modified [DE111],

justice requires the preservation of the *status quo*.  Therefore, this case must be transferred; the

transferee court can then make its own determination with respect to the necessity of the TRO

pending a PI hearing.

Second, it appears that Plaintiffs could have brought this suit in the District of New

Jersey.  Although not dispositive, the majority of the Defendants are either residents or citizens

of, or conduct business in, New Jersey.  (*See* Compl. ¶¶ 5 (Masselli is domiciled in, and a citizen

of, New Jersey); 6 (same for Joseph H. Masselli); 9 (same for Mitchell Brown); 10 (First

American Financial Inc. is a New Jersey corporation); 11 (Intercapital Management, Ltd. (#1)

10

conducts business in New Jersey); 12 (Intercapital Management, Ltd. (#2) is a New Jersey corporation); 13 (Intercapital Management Corp. is a New Jersey corporation); 14 (Intercapital Global Fund, Ltd. transacts business in New Jersey); 16 (Arcadia Estate Co. is a New Jersey corporation).)  While these allegations by themselves are not sufficient to establish that a substantial part of the events that gave rise to the claim took place in New Jersey, they make it more likely that the complained-of conduct actually occurred there.

A few examples should illustrate this point.  First, it is likely that Masselli's alleged manipulation of "the issuance of and transfer of TLG stocks, including using the stock as a personal bank account for the benefit of Sandy Masselli and members of his family" primarily occurred in his place of residence and citizenship: New Jersey.  (*See* Compl. ¶ 30.)  This is bolstered by the fact, the "Treasury Direction" that allegedly initiated the improper issuance of TLG stock requested that the shares be sent to Masselli's Red Bank, New Jersey address.  (*See* TLG's Mem. of Law in Supp. of its Mot. for TRO [DE56], Ex. D.)  Second, it is likely that the use of New Jersey-based defendant corporations in an alleged "scheme to defraud TLG" also likely occurred in New Jersey.  (*See* Compl. ¶ 30.)  Third, Masselli's failure to make certain reports with the SEC also occurred in New Jersey, where he is located.  (*See id*.)  Fourth, Masselli's failure to qualify to do business in the States of New Jersey and Florida, as required by their laws, almost certainly occurred in those States.  (*See id*.)

Furthermore, Defendants also assert that nearly all of the pertinent events giving rise to this litigation occurred in either New Jersey or Florida.  (*See* Br. at 5.)  While Plaintiffs are correct that there are no affidavits supporting those claims, (Resp. at 4-5), Plaintiffs forget that it is *their* burden to establish that venue in Indiana is proper – not the other way around.  Indeed,

Plaintiffs do not claim that Defendants' assertions are inaccurate.

Because Plaintiffs have failed to meet their burden, and given this Court's inclination to transfer this case rather than dismiss it, the Court must give some weight to Defendants' assertions.  The Court must also bear in mind that the venue provisions are generally designed to protect defendants from being sued in unfair or inconvenient locations.  *See LeRoy*, 443 U.S. at 183-84.  Consequently, I find that "a substantial part of the events or omissions" given rise to this litigation occurred in New Jersey and thus venue is proper in the district for that State.

## CONCLUSION

Therefore, the Court hereby **ORDERS** as follows:

1.      Plaintiffs' Motion for Leave to File a Sur-Reply, *Instanter* [DE97] is **GRANTED**;
2.      Defendants' Motion to Transfer Venue [DE81] is **GRANTED**;
3.      Total Luxury Group, Inc.'s Motion for Preliminary Injunction [DE57] is **DENIED AS MOOT**;
3.      All remaining motions are **DENIED AS MOOT**;
4.      The Temporary Restraining Order originally issued on August 15, 2007 [DE62], reissued orally on August 17 [DE69], reduced to writing on August 22 [DE71], and modified by this Court's October 25, 2007 Order [DE111] is to remain in effect until further notice from the transferee court; and
5.      This case is **TRANSFERRED** to the Trenton office of the United States District Court for the District of New Jersey.

**SO ORDERED**.

ENTERED: January 4, 2008

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

12